## Lampkin v. The State.

1. The misjoinder of offences in the same count of an indictment is matter of form, and under the code of Georgia, is no ground for arresting judgment upon a verdict finding the accused guilty in express terms of one of the offences so charged.

2. Robbery by force and robbery by intimidation are not two offences, but different grades of the same offence, and both may be charged in the same count.

3. Robbery by intimidation was a felony prior to the act of March 20th, 1866, and was not reduced to a misdemeanor by that act. Consequently it is still a felony. Where a bill as passed by the General Assembly applies by number to one section of the code, and as enrolled, signed by the presiding officers of the two houses and approved by the Governor, the completed act applies by number to another section of the code, and the two sections relate to different offences, the first to robbery and the second to rape, and where a subsequent act recognizes the law of rape as changed but not the law of robbery, the result is that no change is effected in the law of robbery.

4. On a trial for robbery committed in a certain hotel, it is competent for the State to prove by the prosecutor that he hurried down from the hotel and met a policeman on the street to whom he made complaint that he had been robbed, and by the policeman that the prosecutor came down to him on the street and said that he had been robbed at the hotel, that a certain named person had taken his money and that the accused was present. The evidence indicating that all this took place immediately after the criminal act and as a natural and probable consequence therefrom, it was admissible as a part of the *res gestæ*.

5. Although the prosecutor was intoxicated when he was robbed, it was not competent evidence for the accused that three nights previously thereto he was in a certain saloon intoxicated and complained that two men were trying to rob him, but that he was prepared for them and only carried two or three dollars with him. This was immaterial to the issue on trial, and was not admissible to discredit the prosecutor who had testified that he did not go to the saloon and had not made the statements attributed to him. Nor was it admissible because tending to show that he was in a state of drunkenness for several days prior to the alleged robbery, and while in that state was under the delusion that he was being robbed.

6. The presiding judge was warranted in finding upon the affidavits adduced, construing them all together, that the juror alleged to be incompetent had not heard any of the evidence at the preliminary

trial in the justice's court, and consequently that, whether he had formed and expressed an opinion or not, he might be a competent juror, his apparent incompetency, as indicated by some of the affidavits taken separately, being answered and explained by the others and the attendant circumstances.

7. When facts, and a witness by whom they can be proved, to manifest the incompetency of a juror, come to the knowledge of counsel for the accused, after the jury are sworn but before any further step in the trial has been taken, the question of the juror's competency should then be raised and submitted to the court. It is not sound practice for counsel to remain silent, take the chances of acquittal for his client and then, after conviction, urge the juror's incompetency as a ground for setting the verdict aside.

8. There was evidence to support the finding, and the newly discovered evidence is not such as to require a new trial.

July 13, 1891.

Criminal law.    Robbery.    Indictment.    Statutes. Evidence.    Jurors.    Practice.    Before Judge HUTCHINS. Clarke superior court.    October term, 1890.

The indictment against Lampkin and Reaves contained but one count, and charged robbery "by force and intimidation" of one Kelley. Lampkin was found guilty of robbery by intimidation. He moved in arrest of judgment on the grounds that the indictment attempted to charge him in one count with two offences, robbery by force and robbery by intimidation, which cannot be so joined ; that the latter offence is a misdemeanor and the former a felony ; and that the verdict negatives one of the elements of the crime as charged, and is therefore illegal. This motion and a motion for a new trial having been overruled, exceptions were taken. The grounds for new trial as to the admission and rejection of testimony are sufficiently indicated by the fourth and fifth head-notes. Other grounds were, that the verdict was contrary to law and evidence, because of newly discovered testimony, and because Summers, one of the jury, had heard all the testimony at the preliminary trial in the justice's court and formed and expressed an opinion that the accused was guilty,

whereas he qualified under the statutory questions at
the trial. As to the last ground, the affidavits for the
accused were to the effect that during nearly if not all
the time of the trial of Reaves before the committing
court, in which trial Reaves was charged jointly with
Lampkin with robbing Kelley, Summers was present,
and after all the testimony had been introduced (the
evidence offered to the magistrate relating to both, and
in all essential particulars as to the commission of the
alleged crime by Reaves and Lampkin being substan-
tially the same as subsequently introduced on the trial
of Lampkin in the superior court), stated to Mell, a
member of the bar, that Lampkin was guilty and ought
to be in the penitentiary, and stated to one Reynolds
that he (Summers) could not sit as a juror on the case
because he had heard the testimony and believed Lamp-
kin and Reaves got that money, and he repeated sub-
stantially the same thing to Reynolds two or three
times afterwards.; that Summers was at that time on
the regular panel of jurors and was the next week a
tales juror, and as such was one of the jury which found
Lampkin guilty; that the final trial was a week or
more after the preliminary trial, and Reynolds saw
Summers every day, and he said nothing to Reynolds
indicating that he had changed his mind. There were
affidavits that Mell and Reynolds were both men of ex-
cellent character and their oaths were worthy of full
credit. The defendant made affidavit that he did not
know until after the verdict had been published that
Summers had heard any of the testimony or expressed
any opinion on the case. It appeared from the evi-
dence of the defendant's attorneys, Barrow & Thomas,
that the jury was stricken by Barrow in the absence of
Thomas, except the last juror, one Barber; that Bar-
row accepted Summers as a juror, Summers having
given satisfactory answers to the questions propounded

to him on the *voir dire ;* that at that time Barrow had
no knowledge or intimation whatever that Summers
had heard any of the testimony on the preliminary trial
or elsewhere, nor that he had formed or expressed any
opinion thereupon ; that after the jury had been chosen,
sworn, put in charge of an officer and sent to a room
together to be kept during a recess for dinner, Mell in-
formed Barrow that Summers had not only heard the
testimony against Lampkin in the committing court,
but had expressed an opinion thereupon ; that the judge
had left the court-room to be absent for two hours ;
that Barrow received no information corroborating the
statement of Mell until after the verdict and judgment
were rendered and the court had adjourned for the
term ; that when the information as to the statements
made by Summers to Mell was brought to Thomas by
Barrow, Thomas recalled to him the rule of law that
the affidavit of one witness against a juror would not
be sufficient to overcome his positive affidavit on the *voir*
*dire*, and that to make the attack on Summers with the
testimony of Mell uncorroborated would, under the law,
be useless, and would moreover antagonize the jurors
left upon the jury ; and that therefore Thomas had no
intention of using the statement of Mell then or there-
after, until several days after the verdict, when he ascer-
tained the facts set forth in the affidavit of Reynolds.
For the State there was an affidavit by the solicitor-
general, to the effect that after the verdict had been
rendered Reynolds stated that Summers was certainly
an impartial juror, for he went part of the way home
with him after the trial of Reaves in the justice's court
and never could get Summers to express any opinion
as to whether Reaves and Lampkin were guilty, though
he (Reynolds) said he thought they were both guilty,
or words to that effect.   Also the affidavit of Summers;
to the effect that when he answered the questions on the

*voir dire*, he answered them conscientiously and truth-fully; that up to that time he had never heard any evi-dence against Lampkin on any charge of robbery; that he was present for a few moments at the trial of Reaves, but heard none of the testimony delivered on oath in said case as to which he was interrogated on his *voir dire;* that all he heard on the trial of Reaves was the statement of Reaves and the argument of counsel; that from what was said by Reaves in regard to cutting a watch off of some one, deponent thought and believed that Reaves was on trial for the robbery of a watch; that he was sitting near Mell and Reynolds, and any remark made by him was in reference to Reaves who was on trial, and not with reference to Lampkin who was not on trial; that he does not remember what was said to him by Mell, but whatever was said was in a bantering and jesting way and not indicative of his feel-ings towards Reaves or Lampkin, nor of his opinion of the guilt or innocence of Lampkin; that the state-ment of Reynolds that deponent told him he thought Lampkin was guilty and should be convicted, or any words of like import, is totally false; that what he told Reynolds was, that he could not say whether Reaves and Lampkin were guilty or not, as he had not heard the evidence in the case; that after the trial in the superior court of the case against Lampkin, Reynolds stated that deponent had refused to express himself; that when deponent answered the questions upon his *voir dire*, he was perfectly impartial, and any opinion he may have had was not formed from the hearing of any evidence, nor had he any fixed or determined opinion— none that would not have yielded readily to the evi-dence, and was controlled by it; that his verdict was the result of a calm, impartial and dispassionate study and review of the evidence produced on the trial in the superior court, and of nothing else; and that the ver-

dict was reached by written ballot, and he neither said
nor did anything, before the jury retired to consider
the verdict or afterwards, to influence the finding of his
fellows.    Also the affidavits of the eleven other jurors,
to the effect that the verdict was reached without dis-
cussion and by ballot, and on the second ballot was
unanimous; that the only thing which was discussed was
after the ballot, and was as to whether the verdict of
guilty should be of robbery by force or by intimida-
tion ; that the case on trial was not mentioned by the
jurors during its progress until they retired to their
room to consider their verdict ; that during the trial the
conduct and deportment of Summers was that of an im-
partial, upright, fair and honest juror, without preju-
dice or partiality, and that he said nothing to influence
the jury in arriving at a verdict.    Most of the jurors
made affidavit that they knew Summers; that he was
a man of good character ; and that he would not have
served on the jury if he had been prejudiced or biased
against the defendant, or was in any way an incompetent
juror.    Also the affidavit of Mell, to the effect that after
the jury had been chosen, empanelled and sworn, and
before anything further had been done towards the
trial, during a recess he told Barrow & Thomas that
Summers had been present in the court of inquiry which
investigated the case against Reaves, and that Summers
had said that he believed that Lampkin was guilty and
ought to be convicted.    Also, the affidavit of the mag-
istrate who tried the case against Reaves, that at no
time had he tried a case of the State against Lampkin
charged with robbery, and that Lampkin was never put
upon trial for said charge.    This magistrate testified on
the trial of Lampkin in the superior court, among other
things, that he presided at the committal trial, and
Lampkin was not on trial ; that the warrant as to
Lampkin was dismissed by the prosecutor, and his un-

derstanding was that Kelley said Lampkin did not put his hands on him ; and that though Lampkin was not on trial, the prosecutor was thoroughly examined as to him.

The newly discovered testimony was to the effect that Kelley paid out to the affiants $14.25 or more just before the time he alleged he was robbed, part of which was at Nabor's place of business. The defendant made affidavit that Kelley paid him, about the time he claimed to have been robbed, $35 and probably much more; that Kelley had in his room seven liquor bottles which he had emptied, except a small part of one, and they with their contents, which Kelley and his companions had drunk, cost at least $4 ; that deponent on his trial stated substantially these transactions with himself, and Kelley did not deny it at the trial or elsewhere; and that deponent did not know of the facts sworn to by the affiants just mentioned, until " after dáte." At the trial Kelley testified that he was robbed of $142.40, all he had at that time ; and that he came to the city where the robbery occurred, with $171.10. The testimony was not definite as to how much he had spent.

BARROW & THOMAS, for plaintiff in error.

R. B. RUSSELL, solicitor-general, *contra*.

BLECKLEY, Chief Justice.

1. The first ground of the motion in arrest of judgment attacks the verdict as founded upon an indictment which attempts to charge the accused in one count with two offences, to wit, robbery by force and robbery by intimidation. Were this ground true in fact, it would be no cause for arresting the judgment. It would render the indictment bad in form, but not in substance. The code, §4628, declares that " Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offence in the

terms and language of this code, or so plainly that the nature of the offence charged may be easily understood by the jury." And the next section declares that "All exceptions which go merely to the form of an indictment shall be made before trial; and no motion in arrest of judgment shall be sustained for any matter not affecting the real merits of the offence charged in such indictment." That two offences are charged in the same count will not hinder the charging of either of them in the terms and language of the code, and the jury may as easily understand the nature of each as if they were set forth in separate counts. It is true that the code recognizes as a rule of good pleading that separate counts ought sometimes to be used, for it says, in laying down the form of an indictment: "If there should be more than one count, each additional count shall commence in the following form," etc. (§4628 *supra*.) But it fails to exact as necessary to the substance of an indictment more than one count. On the contrary it prescribes as the only test of substance that the indictment shall state the offence in the terms and language of the code, or so plainly that the nature of the offence charged may be easily understood by the jury. When an indictment should contain more than one count and contains one only, it is bad in form and is subject to exception before trial. But no motion in arrest of judgment can be sustained for *any* matter not affecting the real merits of the offence charged. Dividing the indictment into several counts has no effect whatever on the real merits of the offence or offences charged. Such a defect has relation alone to the manner and form of setting forth the offence or the several offences. It is a defect in the mode of pleading, and not in the substance or real merits of the matter pleaded. If the accused is unwilling to go to trial upon an indictment defective in form only, his remedy is to demur or

except in due time and manner. If upon being arraigned he shall demur to the indictment, his demurrer must be made in writing. And one object of the arraignment is to afford him an opportunity to object to the indictment before trial. Code, §4639. If he insists upon it, he has a right to be tried upon an indictment good in form as well as in substance. But if he neglects matters of form until after verdict, he is then too late. If he is found guilty in express terms of one of the offences charged in the indictment, he may be sentenced for that offence irrespective of whether it is charged alone or in conjunction with others in the same count. Since the language which we have quoted from the code first came into our law, there have been several cases ruled by this court, in which it has been treated as law that two distinct offences cannot be joined in the same count in an indictment. But there, is no affirmative ruling that such joinder would be cause for arresting the judgment, though several adjudications, as we have just said, pronounce the practice bad pleading. We concur in this view, and would not hesitate to declare an overloaded count bad on exception or demurrer taken before trial. In dealing with such defects, the distinction we now make has not always been noticed, but it should have been. It was fully brought out in *Williams* v. *The State*, 60 *Ga.* 88, in which case the indictment charged, in the same count, two felonies, to wit, burglary in the night time, and larceny from the house. After a verdict of guilty of larceny from the house, a motion in arrest of judgment was made and overruled. This judgment was affirmed.

2. But the indictment in the present case does not charge two distinct offences. Robbery by force and robbery by intimidation are two grades of the same offence, and both grades may be charged in the same count. This was expressly ruled in *Long* v. *The State*, 12 *Ga.* 293.

3-8. The other questions involved in the case are carefully and explicitly dealt with in the head-notes.

*Judgment affirmed.*