## McTyier *v.* The State.

1. On a trial for seduction alleged to have been accomplished by persuasion and promises of marriage, promises of marriage made and letters written by the accused to the woman after the seduction but pending the marriage engagement, are admissible in evidence. So, too, is a promise made by him to her at the time of the intercourse or prior thereto, that if she yielded to him that time he would not make such a request again.
2. It is not competent on examination in chief to impeach either chastity or credibility by evidence of what a third person said to the impeaching witness touching the character or conduct of the woman sought to be impeached. And where counsel declared his purpose to be to establish general character in this way, it was not error for the court to exclude the evidence without having heard counsel state what he expected to show by the witness that the third person had said, notwithstanding such third person was a relative (the uncle) of the woman whose character was in question. General character cannot be proved by evidence of particular statements made by relatives.

3. On a trial for seduction, the woman seduced having testified as a. witness in behalf of the State and her chastity and credibility having been drawn in question, it was not error to charge the jury that a witness might be impeached "by proof of general bad character or by proof of general bad character as to the subject-matter of inquiry," and that a witness "may be sustained and his credit restored by proof of general good character or by the proof of general character in respect to the matter or subject of inquiry," and "whether a witness has been impeached by any of these modes is a question of fact for the jury." These propositions applied to such a case are correct in the abstract, and giving them in charge was not prejudicial to the accused though the evidence was less comprehensive than the charge.

4. The testimony of an impeached witness should be disregarded by the jury unless sustained by circumstances or by other credible testimony.

5. On a trial for seduction, the legal definition of the phrase "a virtuous unmarried woman," is matter of law for the court and not a question of fact for the jury. The presumption of the law is that a female alleged to have been seduced was virtuous, and that presumption remains until removed by the evidence. The jury should treat her as virtuous unless the evidence, direct or circumstantial, should satisfy them that she had lost her virtue by having illicit intercourse. Repeating the engagement vow at the time of the sexual intercourse may imply persuasion.

6. It was not error for the court in its charge to caution the jury not to be influenced by public opinion whether for or against the accused, and to state to them that they had nothing to do with the pleasure or displeasure of the public.

7. It was not error as against the accused to instruct the jury to consider the prisoner's statement in connection with the evidence, the instruction as to the statement being otherwise full, complete and correct.

8. In charging on the prisoner's statement it is not error for the court to say that the law "permits" it to go to the jury along with the evidence, this being literally and accurately true.

9. The court having permitted certain evidence to go to the jury not as constituting proof of seduction, it was not error so to state in the final charge.

10. A correct charge on reasonable doubts followed by the phrase, "I charge you, however, that in legal investigations mathematical certainty is not attainable," is not rendered erroneous by the use of the word "however."

11. The verdict, being for the offence of seduction, is not vitiated by what the court may have charged touching the lesser offence of fornication.

12. On the facts disclosed in the record, the remark imputed to a juror as having been made to his fellow-jurors while serving on the trial of a previous case, was not cause either for declaring a mistrial or for granting a new trial.

13. Where there was no separation or misconduct of the jury but one of them casually overheard something, such as " We the jury find the prisoner guilty," said by a bystander, one of a large crowd in the street along which the jury in a body and in charge of a bailiff were, with leave of the court, passing during a recess of the court on their way to dinner, there is no necessary presumption that the accused, whose case was then on trial, was injured. On the facts contained in the record the court was warranted in holding that the substantial conditions of a fair and impartial trial had not been violated; that the person who made the remark did not intend the jury to hear it, and was not aware that they were in hearing distance; that not more than one member of the jury did in fact hear it, and that none of them were influenced by it in their finding. Jurors cannot be heard to impeach their verdict. Affidavits having this object should not be received or read upon a motion for new trial.

14. The evidence warranted the verdict, and there was no error in denying a new trial.

November 21, 1892.

Before Judge FISH. Sumter superior court. May term, 1892.

Indictment for seduction of Miss Jennings; verdict of guilty; exception to denial of a new trial. The motion for new trial sets forth the following:

1. Error in admitting the testimony of Miss Jennings, over the objection of defendant's counsel, in relation to promises of marriage after the alleged seduction. Error in permitting Miss Jennings to testify, over the objection of defendant's counsel, " that he told me, if I yielded to him. that time, he would not ask me such a question any more "; there being no charge in the indictment of "other false and fraudulent means." And error in admitting a letter purporting to have been written by the defendant, after the alleged seduction, to Miss Jennings.

2. William Laney was introduced as a witness by defendant, and he testified that he knew the defendant

but did not know Miss Jennings. Defendant's counsel asked: "Ever hear of her?" Answer: "Only through Mr. Johnny Jennings. In October or November I kept the track out on the Sam road; he came out there down to where I was working, after they had arrested McTyier." Here the State's counsel objected to the witness stating what Mr. John Jennings told him. The court inquired: "How are the sayings of some one else admissible?" Defendant's counsel replied: "It is what people say about her character. That is how her character has been sought to be established by the State. What we expect to prove is what her own kinsman said." By the court: "I don't care to hear what you expect to prove. I will hear from you as to the admissibility of the sayings of a third party. The rule as I understand it is this: that you can show character by general repute, but that you cannot show it, or the want of it, by specific acts. When a witness swears as to general character, then you can on cross-examination inquire into his knowledge by asking as to specific acts. I understand that you propose to show by this witness what some other person said." Counsel: "I have not stated that. I propose to prove her general character by means known to this witness and myself." The court: "You have not stated that, but the witness started to tell what he had heard some one else say." Counsel: "I expect to prove certain things by this witness going to show her general character, what her own kinsman thought of it." The court: "I ask you now, by statements made by some other person to this witness?" Counsel: "I will tell your honor, if you want me to, what I propose to show by this witness." The court: "The evidence is ruled out. I asked you what you proposed to prove, and you decline to state it." Except as above stated, the court did not refuse, nor did defendant offer, to prove the character of Miss

Jennings for virtue. The motion for new trial alleges that the court erred in refusing to allow defendant to prove her general character for virtue, by showing her reputation among her own relatives; and also in making the statements above quoted, in presence of the jury.

3–5. Errors in charging the jury as set forth in the third, fourth and fifth head-notes.

6. The court charged: "It matters not to you nor to me what the public may think. It matters not with whom the public opinion is, whether it be for the accused or for the woman who is alleged to have been seduced. . . Let the public be pleased or let them be displeased with the matter, as I have already said, you have nothing to do." This charge is assigned as error, in causing the jury to presume that there was a public prevailing opinion and sentiment in the case, and that it had not come to their knowledge; in tending to mislead and influence the jury into making their verdict unfavorable to the defendant, etc.

7. The court charged: "Now if you find from the evidence in this case, considering in that connection the prisoner's statement," etc. The error. alleged is, in restricting the statement and leaving the jury no alternative but to consider it with the evidence and not otherwise.

8. The court charged: "The prisoner has a right to make a statement to the jury, which is not under oath, and which is not, technically speaking, evidence; but the law permits it to go to the jury along with the evidence." Error, in using the word "permits," thereby leading the jury to believe the statement was only suffered to go to them, instead of being made as a right.

9. The court charged: "Now, the court permitted some evidence to go to you as to the conduct, sayings and declarations of the accused after the time of the alleged seduction. The court permitted that evidence

to go to you, not for the purpose of constituting, of itself, proof of seduction." It is alleged that this charge tended to mislead and confuse the jury.

10. The court charged: "If you have that sort of a doubt resting upon your mind, it is your duty to give the prisoner the benefit of it. I charge you, however, that in legal investigation mathematical certainty," etc. Error, in the use of the word "however," it being contended that such use conveys the idea that the charge on reasonable doubt has no bearing on the question and that there is no reasonable doubt in the case.

11. The court charged: "If you should believe, from the evidence and the principles of law applied thereto as I have given them to you in charge, that he is not guilty of seduction, but is guilty of the offence of fornication, the lesser offence," etc. Error, in joining a felony with a misdemeanor, there being but one count in the indictment, and the charge being vague and uncertain, with no evidence to support it.

12, 13. One of the jurors who tried the case was W. R. Drane. After verdict one Brannon made affidavit that, on Tuesday night before the trial of McTyier on Friday, Drane remarked to deponent and others, while in the investigation of another case in which they were jurors, that he believed McTyier was guilty of seduction as charged, and that if he (Drane) was elected or put on the jury to try McTyier, he would convict him; which facts and information deponent did not make known to either McTyier or any of his counsel until after. McTyier's trial. Defendant's counsel made affidavit that they knew nothing of the remark, "I believe W. E. McTyier guilty of seduction, and he should suffer the punishment of the law," made by Drane before the trial, until the trial had been gone into and most of the evidence delivered to the jury; and that immediately after they were informed as to the remark having been

so made, they made it known to the court, and proposed to establish it by proof, moving for a mistrial, but the court refused to hear the proof, and overruled the motion. In rebuttal, Drane's affidavit is as follows: He did not say to Brannon or any one else that if he was on the jury he would find McTyier guilty of seduction, nor that he believed McTyier was guilty of seduction as charged, and that if he (Drane) was selected or put upon the jury to try McTyier, he would convict him. He has not in five years spoken to Brannon, who is his personal enemy. He was with Brannon on the jury that tried Joe Duckworth for rape at the same term, and some of the jury said, "If we clear old Duck, we will be on these other two screwing cases"; whereupon deponent said, merely in a jest, "If that be the case, boys, I make a move to find them all guilty now of the offence of rape, on the ground that they are all so ugly they can't get any unless they do rape, and recommend them all to the mercy of the court, and let the court turn them aloose; that will save the lawyers three or four long speeches apiece, and old man Hudson, and will save the court three or four days' work." Deponent had never heard any of the evidence under oath, had never formed or expressed any opinion about the case of McTyier, and did not express any opinion to anybody about the case. To the same effect are affidavits by seven others of the jury who tried Duckworth, in one of which occurs the additional statement that Duckworth's case had not been submitted to the jury when Drane made his remark; also, that when the remark was made, Brannon said to a juror by whom he was sitting, that that looked like trying cases "before them came before us."

The defendant submitted the affidavits of three persons, that during the dinner recess of court, as the jury were being carried to dinner, and just as they were passing a

crowd assembled in front of the court-house, one Cosby, who was but five or six feet distant, addressed to the jury in a loud tone the words, "We, the jury, find the defendant guilty." In one of these affidavits it is stated that the affiant was bailiff in charge of the jury, that he heard Cosby's remark, whose face was turned to the jury, many of whom were nearer Cosby than affiant. In another of the affidavits the affiant says that there was a large crowd on the sidewalk, which obstructed the street; that it took an effort on the part of the bailiffs in charge of the jury to make a passage for the jury through the crowd; that Cosby was speaking and conversing about the trial to affiant and others; that he heard Cosby utter to and in presence of the jury in a loud tone the words, "Jury, we, the jury, find W. E. McTyier guilty"; and that affiant heard various members of the crowd say that would have an effect on the jury trying the case, and an influence over the jury. The third affiant says that he was bailiff of the court; and his account agrees with that of the bailiff first mentioned. It appears that the defendant was present at the time and place the words were said. His affidavit agrees with those of the bailiffs as to what the words were; and he further swears that the whole group of men were staring at the jury as they passed, that on the utterance of the words the jury turned and looked at Cosby and the group, and that the bailiff arrested Cosby and placed him in charge of another officer of the court. J. M. Duckworth made affidavit that he was one of the bailiffs in charge of the jury, and was in front of them at the time in question, pushing and asking for passage through the crowd, and, his whole attention being directed to this purpose, he did not hear the words spoken by Cosby.

In rebuttal are the following affidavits: By J. D. Duckworth, that he was present with Cosby, defendant

McTyier, and others, at the time in question, and heard
McTyier say to Cosby, "If I had my pistol with me, I
would shoot you," and Cosby remarked: "By the time
you get through with the shooting you have done, I
reckon you will be satisfied. Just wait till the jury
comes down and says, 'We, the jury, find the prisoner
guilty;'" that these words were said in an ordinary
tone, and Cosby's back was toward the jury who were
passing about twenty or thirty feet away; that he did
not use the remark to the jury and did not address the
jury, but said the words in jest, whereupon deponent
told him to hush, that there went the jury; and that
there was no excitement nor loud talking in the crowd.
The affidavit of Cosby is to the same effect. He further
says that he was summoned as a witness in the case;
that when he made the remark to defendant, he did not
know any of the jury were passing, but when Duckworth
told him to hush, etc., he turned and saw the jury
passing; that he did not then know a single man on the
jury, and did not know who the jury was, and was
astonished when arrested and told that it was for a
remark he had made before a jury; that he is a friend
to McTyier, had no interest in the trial for or against
him, and if his sympathy went out for anybody, it would
be for McTyier; that he did not know the prosecutor
nor the lady McTyier seduced; that the affiants for the
defendant are mistaken as to his addressing those re-
marks to the jury, for he did not see the jury and
did not know there was a jury about until Duckworth
called his attention to it; and that he is familiar
with the practice of the courts, and would not have
used that remark in the presence of the jury under any
circumstances had he known the jury was present. All
of the jurors made affidavits that the verdict was based
solely on the evidence and the charge of the court, and
that they were not influenced by Cosby's remark. All

of them save one swore that they did not hear the remark made, and this one swore that he did not know who made it and was not influenced by it. One swore that he heard in the jury-room, while the case was under consideration, that Cosby had said in the hearing of the jury to find the defendant guilty, and that this remark was discussed in the jury-room. Drane and another juror swore that it was not discussed in the jury-room in their presence; and this other swore that he never heard of it at all until Sunday morning after the trial, when he was at home.

Under the above facts, the defendant alleges that a new trial ought to be granted, because the court overruled his motion to declare a mistrial; because the conduct of Cosby was an attempt to influence the jury into finding a verdict of guilty as an expression of public opinion; because Drane had prejudged the case and made up his mind to convict without hearing the evidence; and because the jury discussed Cosby's remarks in the jury-room.

14. Verdict contrary to law and evidence.

L. J. BLALOCK, W. H. KIMBROUGH and J. B. PILSBURY, for plaintiff in error.

C. B. HUDSON, solicitor-general, by J. B. HUDSON and HARRISON & PEEPLES, contra.

BLECKLEY, Chief Justice.

A full discussion of the numerous points ruled in this case would require an opinion of great length and tedious minuteness. No such seems necessary; and merely to restate the points and reiterate the rulings announced in the syllabus would be unprofitable. In most instances, the correctness of these rulings is sufficiently apparent on the face of them. The propositions in which they are embodied and enunciated are almost self-evident. We leave the case to stand on the head-

notes, together with the facts set out in the official report.            *Judgment affirmed.*