## AIKEN *v.* THE STATE.

No. 7444.  JULY 30, 1930.

*Claud Brackett* and *J. R. Hutcheson,* for plaintiff in error.

*John A. Boykin, solicitor-general* and *J. W. LeCraw,* contra.

RUSSELL, C. J. On June 18, 1929, Sam Aiken admitted that he. had shot and killed his wife, Annie Mae Aiken, and Boyce Hunter, whom he claimed to have caught in the act of adultery in his home. He was indicted by the grand jury for the murder of the wife. It does not appear whether he was indicted for the murder of Hunter. Upon the trial Aiken was convicted, without a recommendation. He filed a motion for new trial, which was later amended. The motion was overruled, and the exception is to that judgment. The defendant's. statement would have authorized the jury to find him guilty only of voluntary manslaughter, and the judge so charged them. However, the jury evidently did not believe the statement; so that the real question in this case is whether the evidence was sufficient to authorize a conviction of murder, and whether the errors assigned in the motion for new trial were such as to prejudice the accused's right to a fair trial.

In the first special ground of the motion it is complained that the court erred in overruling defendant's motion to continue on the ground that his counsel had not had sufficient time to prepare for his trial. The second ground alleges that the venue of the crime was not proved, for the reason that it was not shown on the trial that it was committed in Fulton County, as no witness testified to this fact, and it was not shown prima facie that the crime was committed in Fulton County. The third ground alleges that it was error to charge the jury as follows: "The defendant enters upon the trial of the case with the presumption of innocence in his favor, and this presumption remains with him until and unless the *evidence* in the case satisfies your minds beyond a reasonable doubt as to his guilt." The error is alleged to be that the word "evidence" excludes the defendant's statement, in that the jury should have been instructed that if from both the evidence and the statement they had a reasonable doubt of defendant's guilt they should acquit him. The fourth ground contends that it was error to charge the jury that "Murder is the intentional killing of a human being, or the killing of a human being by the intentional use of a weapon that in the manner it is used at the time is likely to kill, and a killing without either justification or mitigation," for the reason that it omitted the law of malice and was inconsistent with the

statutory definition of murder already charged by the court, and that the charge tended to lead the jury to believe that malice was not an ingredient of the crime of murder. The fifth ground alleges the court erred in charging the jury: "The fact that the deceased, the wife of the slayer, may have been unchaste would not of itself amount to a justification of the homicide. In other words, gentlemen, if a man's wife is guilty of an act of adultery, that is no legal justification for the husband to kill the wife, nor would it, in the absence of a sudden heat of passion, resulting from adequate cause, be sufficient to reduce the homicide below the grade of murder." The complaint is that (a) the charge expressed an opinion as to what was proved on the trial, and led the jury to believe that the court did not think the finding of the adultery would be adequate cause to arouse a sudden heat of passion; (b) it is argumentative against defendant's contention that the sudden heat of passion induced by finding his wife with another man was sufficient in any event to reduce the crime to manslaughter; and (c) it tended to lead the jury to believe that the adultery of the wife, suddenly discovered, was not adequate to arouse a sudden heat of passion contemplated by law.

The sixth ground alleges as error the admission of the following testimony of the mother of Hunter: "Boyce stepped back in the house to get his hat. He said to me: 'Mama, Sam says that he has got some good liquor up at his house, and if I will come up there he will give me a drink.'" The complaint is that the evidence was admitted over objection at the time of admission, and was irrelevant, immaterial, hearsay, and not a part of the res gestæ; and more particularly (a) it tended to make the jury believe that defendant enticed Hunter to his home to kill him, and was introduced for that purpose, and was therefore damaging; (b) it was not a part of the res gestæ, since there was testimony that the killing was ten minutes or more after Hunter went to Aiken's house; (c) it tended to lead the jury to believe Aiken accompanied Hunter, and (d) it tended to make the jury believe Aiken knew Hunter was coming right over to Aiken's house, and to disbelieve the defendant's statement that defendant had said he was going to town to hunt for a job; (e) it tended to cause the jury to believe Aiken, Mrs. Aiken, and Hunter were drinking in the kitchen of the Aiken home immediately before the killing, which

the State sought to establish by said hearsay; and (f) the witness being the mother of deceased, said hearsay had prejudicial weight, since same was delivered "as a voice from a dead son to his mother." The seventh ground alleges the court erred in admitting, over defendant's objection, the following testimony of Carl Aiken: "This looks much like my father's handwriting. It is my opinion that this is his handwriting. I am most positive that it is." The error is alleged to be in the fact that preceding this testimony the witness, on question, had testified he did not know his father's writing, and hence was now testifying without having qualified on the subject. In the eighth ground it is alleged the court erred in admitting the testimony of Elmer Aiken, that "this is the same paper and seems to fit right in the place where this piece is torn off of this tablet," the State's contention being the piece of paper was the same as that found on body of the deceased wife on which had been written a note by the husband and not the wife, and that said testimony was irrelevant and immaterial. The ninth ground alleges that it was error to admit, over objection, a note or letter to defendant's son, in the following language: "You can have the Hupmobile and everything in the house, except the graphophone and the organ. Sell the house and pay what you can, for I can't do anything myself. So be a good boy, and don't grieve after me. I wish I could carry you with me, but have not got the heart. So the one that reads this note, don't blame anybody but me." The objections to the admission were that the note was irrelevant and immaterial, not dated, and it was not shown when it was written, and was foreign to the issue. The tenth ground alleges error in the admission of the following writing, over objection: "Dear Baby: I want you to have all that Daddy has got. Pay Granddaddy what I owe him, and you and Buster go to his house and be good boys." The objections were that the note bore no date, that it was not shown when it was written, and that it was irrelevant and immaterial. In the eleventh ground it is alleged the verdict is contrary to law, because the jury failed to exercise the discretion vested in it to recommend the defendant to the mercy of the court, since the facts of the case demanded at least such a recommendation.

■ After a careful review of the evidence, we are satisfied that the jury were authorized to find the defendant guilty of murder

instead of voluntary manslaughter, and that the evidence did not authorize a verdict of not guilty. According to the testimony of eye-witnesses, the accused chased his wife with a loaded shotgun out of their dwelling-house; and when she had reached a wire fence in the back yard and could go no further, she turned and fell on her knees, begging him not to shoot, and he deliberately took aim and fired. The discharge blew a large portion of the helpless woman's skull several feet from her head, causing instant death. Some of the witnesses differ as to whether Hunter came through the house with Aiken or alone, after Aiken returned from using the telephone at the home of Hunter's father across the street. It is true that two of the witnesses did not see the actual effect of the discharge of the gun, because in their horror of what they saw was impending they momentarily stepped out of view. Under the well-settled rule, this cast upon the defendant the burden of showing that the killing was not murder but was accompanied by circumstances of justification or mitigation. That the killing was not murder, as it would be presumed to be under these circumstances, the defendant relies only upon his statement. In this he claimed to have concealed himself in the dwelling after leading his wife to believe that he had started to Atlanta to obtain employment, and that from his point of vantage he heard his wife and Hunter decide to have sexual intercourse in a chair rather than go to the bed in another room, due to his wife's fear that he might return. He stated he finally saw them begin the intercourse, could not stand the sight, and, not knowing what to do, picked up his shotgun intending to kill them both with one shot. The jury had the right to believe this statement, but it is plain from their verdict that they did not. There appear to be a few circumstances in the evidence which corroborate at least the statement that Boyce Hunter and the defendant's wife were together in the dining-room at the time of the shooting, and that Hunter was shot while sitting in the position attributed to him by the defendant. However, the circumstances referred to did not corroborate the defendant's statement that he discovered Hunter and his wife in the act of sexual intercourse. Nevertheless the jury could have believed the statement in its entirety without any corroboration whatsoever, and they were in effect so instructed by the court. As has often been stated by this writer, the jury are the exclusive arbiters of all questions

of fact and of all reasonable deductions that can be drawn from the evidence both direct and circumstantial; and so we can not hold that the verdict in this case was not authorized by the evidence. The question then as to whether the plaintiff in error is entitled to a new trial must depend entirely upon a consideration of the special assignments of error as set forth in the motion for new trial.

■ Did the court err in refusing to continue the case on the ground that defendant's counsel had not had sufficient time to prepare for trial? It appears from the record that counsel were not employed until June 22, 1929, and that they went to the residence of defendant, where deceased was killed, to examine the scene of the shooting, but could not get in, as the house had been padlocked. A counter-showing was presented, in support of which the State produced a large number of witnesses who testified that both counsel for defendant had more than once been inside the house before it was padlocked, and that they had also entered it on an order of the court after it was padlocked. (The court, on the hearing of the motion to continue, directed that counsel have an opportunity to examine the place on the afternoon preceding the day set for trial.) It further appears from the evidence in support of the counter-showing, as well as from evidence in favor of the motion to continue, that defendant's counsel desired to examine certain bureau drawers, for the purpose of discovering certain writings believed to be contained therein; and that when search was finally made the papers, if ever contained in the drawers, had been eloined, but that defendant's counsel could have made the search on their first visit, which they neglected to do by oversight or because they were willing to risk the papers remaining where they were. It was not made to appear to the trial court, nor does it yet appear, that a continuance of the trial would have resulted in finding these papers; so the accused was not hurt by the court's refusal to continue the case. Justice demands that any one and every one on trial for his life should have ample time to enable his counsel to prepare for trial. Any other practice would, in effect, deprive one accused of crime of one of the most essential rights guaranteed by both the Federal and the State constitutions, the right of counsel. Any other procedure would rob one accused of a capital offense of anything more than a mere shadow, while depriving him of the substance, of his rights.

■ We can not sustain the contention that it was not proved that the crime was committed in Fulton County. The first witness for the State testified that the house was in Fulton County. The contention of plaintiff in error rests upon the fact that his wife was shot and killed in the back yard of the lot on which the house stood, and that there was no evidence that this yard was in Fulton County; that this spot is very near the line of Fulton and another county, and therefore that Fulton County was not shown to have jurisdiction of the offense. There might be some doubt as to whether venue were proved, were it not for other testimony in the record. However, all the testimony on the question showed that the accused shot his wife from the back porch of the house, which is in Fulton County. More than one witness testified from an examination of marks made by shot, some of which caused the wife's death, that she could not have been killed except from the back porch of the house. This being true, as the jury had a right to believe, it matters not that the wife was in a different county from the defendant when the shot was fired, or that she was not in Fulton County. The venue of the offense is fixed by the location of the person firing the fatal shot, irrespective of the location of the person killed by the discharge of the gun. Penal Code (1910), § 27.

■ Did the court exclude the defendant's statement by the charge complained in the third ground? The complaint is that this charge limited the jury to the evidence and led them to believe they could not also consider the statement of the defendant in determining his guilt or innocence. In our opinion the exception is without merit. This language did not exclude the principle that the jury would be authorized to acquit if they believed from both the evidence and the statement that the defendant was not guilty. Preceding this charge the court instructed the jury that they had a right to believe the defendant's statement in preference to all the sworn testimony in the case. In fact the phrasing of this instruction is extremely favorable to the accused. In it the court was dealing with the presumption of innocence, and was referring, not to the statement, but only to the evidence; and the court says to the jury that until and unless the *evidence* in this case satisfies your minds beyond a reasonable doubt that he is guilty, the presumption that he is not guilty, which the law establishes in his favor, remains. No jury is likely to infer that the prisoner would incriminate him-

self in his own statement; and therefore to have included reference to the defendant's statement in this instruction might have led the jury to conclude that the defendant had said something which tended to show his own guilt, and would have been harmful to the defendant.

■ It is insisted that the charge excepted to in the fourth ground was misleading and confusing, and led the jury to believe that malice was not an ingredient of the crime of murder. We do not think the jury were misled or confused by this charge. Immediately preceding it they had received from the court the legal definition of murder, and this further charge on intentional killing or a killing by intentional use of a deadly weapon was but a reference to the principle enunciated in the Penal Code, which provides that in a case of involuntary manslaughter the defendant may be found guilty of murder where the weapon was used without the intention to kill but with intention to do an act which would be likely to produce death.

■ There is no merit in any of the exceptions to the charge complained of in the fifth ground. The exceptions are that the charge expressed an opinion as to what had been proved, and led the jury to believe the court did not consider the adultery, seen by the husband, adequate cause of a sudden heat of passion that would reduce the crime to manslaughter; that the charge was argumentative and against defendant's defense of finding the wife in the act of adultery; and that the words "adequate cause," in referring to the raising of a sudden heat of passion, led the jury to believe that the discovery of the adultery would not be adequate cause for such passion. The court's language can not be tortured into an expression of opinion as to anything that was proved. The court's statement amounted to a declaration of the clear principle that the adultery of the wife does not justify the killing of her by the husband. The court said: "The fact that the deceased, the wife of the slayer, may have been unchaste would not of itself amount to a justification of the homicide." It was equivalent to saying that if the wife were unchaste it would not be a justification of the homicide, and it is presumed that a jury of ordinary intelligence knows the difference between justification and mitigation. After giving this instruction the court made plainer his meaning by saying: "In other words, gentlemen, if a man's wife is guilty

of an act of adultery, that is no legal justification for the husband to kill the wife." The court then proceeded to say, on the matter of mitigation, that in the absence of a sudden heat of passion resulting from adequate cause, it would not be sufficient to reduce the homicide below the grade of murder. This is a correct instruction upon the subject of mitigation, and it is adjusted to the statement of the accused; no part of the evidence, but only the accused's statement, having suggested that the wife was at any time unchaste. The language of the instruction refutes the claim that it is argumentative. After using the words "adequate cause," unless the judge had used the other language complained of, he would have been assuming that the statement of the defendant of the adultery. was true, and this would have subjected the instruction to criticism as an expression of opinion. Whether or not the facts stated by the defendant were sufficient to arouse that impulse of passion supposed to be irresistible, so as to provide mitigation, was peculiarly a question for the jury, and in using the words "adequate cause" the court properly submitted to the jury for determination the question whether what the defendant saw was adequate cause to produce such passion.

■ That the testimony set forth in the sixth ground was hearsay can not be denied, and hearsay is generally inadmissible. However, the Code, § 5763, expressly provides that hearsay is sometimes admissible in illustration of motive and conduct. Upon this ground we think the court did not err in admitting the testimony in spite of the objection offered at the time it was introduced. According to the defendant's statement, the only purpose of Hunter's going across the street to his house was to see the wife of accused for illicit purposes, and Hunter came after he thought accused had gone to Atlanta. There was testimony, however, that the accused and Hunter went together to the accused's house; and since the accused had a right to present his reason why Hunter went there, the State had a right to prove by circumstances and direct testimony that he went for a different reason. Furthermore, under the decision in *Lampkin* v. *State,* 87 *Ga.* 516 (13 S. E. 523), the old rule leaving to the court to determine whether certain facts were a part of the res gestæ was changed, and the court can determine now, without regard to the length of time, what facts connected with the crime are a part of the res gestæ. We therefore

think the court properly admitted this evidence as part of the res gestæ, and that the objections to it have no merit.

■ The exception in the seventh ground is without merit. The fact that the witness testified that he could not identify his father's handwriting very well, and later altered that testimony by swearing that the paper looked very much like such handwriting and in his opinion was, and that he was positive it was, would not make a question for this court; for, after all, the credibility of the witness was for the jury, and where statements of the witness are contradictory it would be for the jury to say which statement it would believe.

■ The evidence complained of in the seventh and eighth grounds was not irrelevant and immaterial, and its weight or value was a question for the jury. Even if it was, as claimed, prejudicial to the defendant, it was not illegal.

■ The complaints set out in the ninth and tenth grounds are without merit. That these notes were not dated would not be valid ground for their exclusion from the evidence, nor would that fact make them foreign to the issue in the case. Even though it does not appear from these notes when they were written, the jury could ascertain, if they believed testimony of one witness that the defendant wrote a number of notes on the afternoon prior to the homicide, and of another witness as to what was said to her by the accused at the time he delivered certain of them to her, whether or not they were the same papers. And the testimony of neither was denied by the accused in his statement.

■ The accused contends that the verdict is contrary to law, because the jury failed to recommend him to the mercy of the court, and that this was an abuse of its discretion by the jury. Whether or not a jury has abused the unlimited discretion given it by law, in regard to recommending a defendant to the mercy of the court, under which he would be sentenced to life imprisonment, is in no instance subject to review by the courts; and though it might perhaps at some time present a question for decision, we very much doubt it. However in the present case, after the matter has been subjected to our review, we are not prepared to hold that the jury did in this instance abuse its discretion.

*Judgment affirmed. All the Justices concur.*