## 21021. MARTIN *v.* THE STATE.

592

Decided January 14, 1931. Rehearing denied February 17, 1931.

*H. A. Allen,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, William Schley Howard, John H. Hudson,* contra.

Bloodworth, J.   T. L. Martin, with others, was indicted for murder, the person alleged to have been killed being Dennis Hubert.   The defendants elected to sever, and the State put Martin on trial.   The jury convicted him of voluntary manslaughter.   He filed a motion for a new trial, which, after being amended, was overruled, and a writ of error was filed.   The special grounds of the motion for a new trial allege error in instructions of the court to the jury.   Neither of the excerpts of which complaint is made requires the grant of a new trial, when it is considered in connection with the remainder of the charge and in the light of all the evidence.

1.   The 1st excerpt from the charge complained of is as follows:   "If an attempt has been made in this case to impeach any witness by proof of contradictory statements previously made, you may determine from the testimony first whether such statements had been made, and secondly, whether it was a contradictory statement to that which has been made by the witness on the stand; and, thirdly, whether it is material to his testimony and to the case; and if you should find that any witness has been successfully impeached by proof of contradictory statements, you should disregard that statement unless corroborated by other credible testimony, either direct or circumstantial, and the credit to be given to the balance of the testimony of the witness would be for the jury to determine."   It is alleged that this portion of the charge was error in that it took from the jury the right to determine as to the credibility of witnesses.   It is in conformity to a number of decisions of this court and of the Supreme Court.   However, to show this, the excerpt itself must be read in connection with its

context. Immediately preceding the portion of the charge under attack is the following: "The credibility of witnesses is always a matter for the jury's exclusive determination; and in determining what witnesses you will believe, you may look to all the facts and circumstances in the case, the witnesses' manner of testifying, their intelligence, their means and opportunities for knowing the facts testified about, the nature of the facts testified about, and the interest or want of interest they may have in the case, and the probability or improbability of their testimony; its reasonableness or unreasonableness, and the personal credibility of the witnesses, so far as the same may legitimately appear from the trial of the case." And, immediately after the extract complained of, the judge instructed the jury as follows: "After all, it is a question for you to determine whether a witness has been impeached, and to determine the credibility of such witness and the weight his testimony shall receive in your consideration of the case." In considering this alleged error the excerpt should be considered in the light of the entire charge and in connection with all the facts; and when so considered, there is no error in it. Among the decisions supporting this charge are the following: *Lewis* v. *State,* 91 *Ga.* 169 (16 S. E. 986); *Sheppard* v. *State,* 167 *Ga.* 337 (5), 338 (145 S. E. 654), and cit. See *Williams* v. *State,* 69 *Ga.* 14 (28), 34; *McTyier* v. *State,* 91 *Ga.* 254 (4) (18 S. E. 140); *Bart* v. *Scheider,* 39 *Ga. App.* 471 (c) (147 S. E. 430).

2. The second excerpt from the charge complained of is as follows: "If you believe, beyond a reasonable doubt, that the defendant, either by himself or in connection with others, went to the place of the deceased for a lawful purpose, and that there was an assault upon the deceased, and that during the progress of a struggle that ensued that the defendant or any member of the posse killed the deceased in the heat of passion engendered by the struggle, you would be authorized to find the defendant guilty of the offense of voluntary manslaughter." It is insisted that in these instructions the judge authorized the jury to convict the accused for mere "presence" at the scene of the homicide. Such a conclusion is unwarranted when the entire charge is read. The judge charged at length on "conspiracy," and, among other things, told the jury, "unless there was a conspiracy, the defendant can not be held as a principal for anything except what you may find

from the evidence that he, the defendant, may himself have done, if you find he did anything." "The act of one does not bind another unless or until the common agreement and intent to do what is done is, to the satisfaction of the jury, established to have existed between the parties." "If you find there was a conspiracy, and that the defendant participated in a common felonious intent and purpose to do what was done, and what was done is that which is alleged in the indictment, then what was done by any person named in the indictment in pursuance of that common intent and purpose would be just as binding upon the defendant as if he did the act himself." *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488). From the above it will be seen that the judge plainly charged the jury that the defendant could not be held responsible for any act of any defendant unless they were acting with a common intent and purpose. The defendant admitted that he and his associates went to the place of the homicide with *a common design and purpose,* and that was "to hold the nigger until the police came." This common design and purpose was illegal. There was no officer present at the scene of the homicide, nor does it appear that either the accused or those associated with him had been deputized by any officer for any purpose whatever. The only authority given a private person to make arrests in Georgia is found in § 921 of the Penal Code of 1910. Under the facts of this case this section gave to no member of the "posse" any authority to seize and "hold the nigger until the police came." In *Piedmont Hotel Co.* v. *Henderson,* 9 *Ga. App.* 672 (3) (72 S. E. 51), it was said: "Whoever arrests or imprisons a person without a warrant is guilty of a tort unless he can justify under some one of the exceptions in which an arrest and imprisonment without a warrant are permitted by law." See page 680 (4), and cases cited. In the case under consideration the defendant can not "justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law." See *Franklin* v. *Amerson,* 118 *Ga.* 863 (2) (45 S. E. 698). Since the defendant admitted taking part in this unlawful enterprise, then, under the principle announced in the above cited cases, he would be accountable for the motive actuating them as a posse. *Mills* v. *State,* 24 *Ga. App.* 68 (100 S. E. 32).

3. The third special ground of the motion complains that the court erred in charging the jury as follows: "The passion, if any,

to be sufficient to reduce to manslaughter, must be aroused by a just cause, such as would produce the same state of mind upon the part of the slayer as would an unjustifiable assault, or attempt to commit a serious personal injury upon him. The act must be suddenly committed and must be under the impulse of passion justly aroused by adequate provocation, to reduce the act to manslaughter." We find no reason in this ground for granting a new trial. In *Aiken* v. *State,* 170 *Ga.* 903 (154 S. E. 368), the Supreme Court said: "The court then proceeded to say, on the matter of mitigation, that in the absence of a sudden heat of passion resulting from adequate cause, it would not be sufficient to reduce the homicide below the grade of murder. This is a correct instruction upon the subject of mitigation." In *Mize* v. *State,* 135 *Ga.* 297 (4) (69 S. E. 173), the Supreme Court said: "In all cases of voluntary manslaughter there must be both such provocation as the statute provides and passion. The provocation must come from an assault or an attempt to commit a serious personal injury, or from circumstances which are equivalent to an assault or an attempt to commit a serious personal injury." See *Jackson* v. *State,* 160 *Ga.* 565 (128 S. E. 679). Moreover, in this case the charge as to what would be sufficient to reduce the homicide to manslaughter could not have injured the accused, as the jury found him guilty of that offense.

4. The excerpt from the charge complained of in the 4th ground of the motion is as follows: "If the circumstances were such as to show no malice, either express or implied, and you believe there was an attempted illegal arrest of the deceased, but that the defendant in good faith thought he had a right as a member of the posse to take the deceased into custody, and in the heat of passion brought about by the ensuing struggle he killed the deceased, he would be guilty of voluntary manslaughter." We find in this portion of the charge no error that requires the grant of a new trial. The charge in this case is easily differentiated from the charge in *Hall* v. *State,* 133 *Ga.* 178 (7) (65 S. E. 400), quoted and relied upon by plaintiff in error. The court in the *Hall* case stated that "such charge did not embody a statement of such facts as would make the defendant guilty of voluntary manslaughter." In the instant case counsel for plaintiff in error, in their brief, say: "Under one construction of the statement of facts given by the

court below the defendant might have been guilty of voluntary manslaughter." They insist that under another construction of the facts stated he would have been justifiable under the law. A reading of the entire charge will show that this second construction was fully covered by it.

5. The 5th ground of the motion for a new trial alleges that the court erred in giving the following instructions to the jury: "Manslaughter is the unlawful killing of a human creature, without malice, either express or implied, and without any mixture of deliberation whatever, which may be voluntary, upon a sudden heat of passion." This charge is alleged to be error "for the reason that the court failed to instruct the jury that to constitute the crime of voluntary manslaughter there must be an unlawful killing," and that the court nowhere instructed the jury that "voluntary manslaughter was the unlawful killing of a human being without malice." The judge gave in charge to the jury the code definition of manslaughter, and did thus charge them that "Manslaughter is the unlawful killing of a human creature without malice either express or implied, and without any mixture of deliberation whatever, which may be voluntary upon a sudden heat of passion." If counsel wished a fuller charge on this subject, he should have made request therefor as provided by law.

6. The evidence supports the verdict, and no error requiring a reversal is shown.

*Judgment affirmed.* *Broyles, C. J., and Luke, J., concur.*