30902. CONLEY *v.* THE STATE.

54

DECIDED OCTOBER 12, 1945.

*S. F. Memory, B. D. Murphy,* for plaintiff in error.
*John W. Bennett, solicitor-general,* contra.

MacIntyre, J. ■ The defendant was being prosecuted for seduction, and the prosecutrix claimed that, as a result of the criminal intercourse which was brought about by the persuasion and promises of marriage of the defendant, the baby in the court-room with her was his illegitimate child. As the illegitimate child had been identified by the prosecutrix before the jury, without objection, the trial judge did not commit prejudicial error in permitting the associate counsel for the State, in his argument to the jury, to contend that a resemblance existed between the child and the defendant, his putative father, since the jury had equal opportunity, along with the associate counsel, to view both the child and the defendant, and were not compelled to accept

the conclusions of the associate counsel. See, in this connection, *Posey* v. *State,* 40 · *Ga. App.* 290 (3) (167 S. E. 340); State *v.* Malonee, supra; *Parker* v. *State,* supra. However, the resemblance, if any, was a circumstance which the jury might consider as tending to prove the criminal intimacy of the parties, but not the promise of marriage. Nevertheless, we think that it was beyond the range of legitimate comment for the State's associate counsel, for the first time in the concluding argument, to force or project into the case, over the objection of the defendant, matters concerning the personal appearance of an innocent legitimate baby—or a grown-up child for that matter—of the defendant, concerning which child no evidence had been introduced, and to whom no reference had theretofore been made, when the child was sitting in the courtroom at the time with the innocent mother, wife of the defendant, or elsewhere, for the purpose of arguing that the legitimate child resembled the illegitimate child of the prosecutrix. The law forbids "'the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice the accused.'" *Brooks* v. *State,* 55 *Ga. App.* 227, 232 (189 S. E. 852). It might be noted that counsel was not arguing that the child's presence in the courtroom was brought about by the defendant or his counsel for a motive of any kind which was intended to affect either the court or the jury or for any other ulterior motive. See *Adkins* v. *Flagg,* 147 *Ga.* 136 (2-a) (93 S. E. 92). As the case is being reversed upon another ground, we do not decide as to whether such comments were prejudicial to the defendant, or whether the judge abused his discretion in allowing them over objection.

■ The defendant was charged only with committing seduction by "persuasion and promise of marriage." The defendant contends that "the failure of the court to instruct the jury that the State relied for conviction only upon proof that the prosecuting witness had been seduced by persuasion and promises of marriage" was reversible error. The language relative to seduction brought about by persuasion and promises of marriage or other false and fraudulent means, was that the judge, in the first instance, stated to the jury that the defendant was charged in the indictment with seducing the prosecutrix "by persuasion and promises of marriage." Thereafter, he gave to the jury the full definition

of the crime of seduction as contained in section 26-6001 of the Code, as follows: "If any person shall, by persuasion and promises of marriage, *or other false and fraudulent means,* seduce a virtuous, unmarried female, and induce her to yield to his lustful embraces, and allow him to have carnal knowledge of her, he shall be punished by imprisonment and labor in the penitentiary for not less than two nor more than twenty years." (Italics ours.) He thereafter charged. "I charge you further, that it is no defense to the charge of seduction, when the act has been satisfactorily proven, that the personal conduct of the unmarried female may have been imprudent, improper, or immodest, short of actual sexual intercourse prior to the alleged seduction, whatever the evidence shows as to the time of the seduction. She may be a victim of seduction, though imprudent or immodest in her conduct, provided no man ever had sexual intercourse with her prior to the alleged seduction, and provided the alleged seduction was brought about and induced by persuasion and promise of marriage, *or by other false and fraudulent means,* as defined to you and as hereafter explained." (Italics ours.) And thereafter the judge further charged: "To make out the case of seduction, there must be persuasion and promises of marriage—promise of marriage—*or other false and fraudulent means.*" (Italics ours.) His last reference to this matter was as follows: "Now, gentlemen, if you believe beyond a reasonable doubt that this defendant, in this county, at any time within four years prior to the finding and return of this bill of indictment into court, committed the crime of seduction, as charged in the bill of indictment, then it would be your duty to convict him; if you do not believe him guilty beyond a reasonable doubt of that offense, then it would be your duty to acquit him." It seems to us that the charge was contradictory or at least confusing and misleading, in that it was not clear that the defendant could be convicted only if the means he used to seduce the prosecutrix was persuasion and promises of marriage (which were the ones charged in the indictment), and he could not be convicted if he used only "other false and fraudulent means," with which he was not charged in the indictment. *Jones v. State,* 90 *Ga.* 616 (3), 628 (16 S. E. 380); *Thomas v. State,* 146 *Ga.* 346, 347 (91 S. E. 109); *Thomas v. State,* 19 *Ga. App.* 104 (91 S. E. 247); *Joiner v. State,* 37 *Ga. App.* 487 (140 S. E.

799); *Barton* v. *State,* 51 *Ga. App.* 178 (179 S. E. 750). See, in this connection, *Webb* v. *State,* 47 *Ga. App.* 183 (170 S. E. 93).

The prosecutrix testified in part as follows: "Owen [the defendant] turned off the main road on to a little side road and went out about two hundred yards; any way, it was quite a ways, and then he parked; and, when he did, he hugged me and kissed me, and then he said, 'Let's get out and walk down the road a ways and leave them awhile;' and, when he said that, I consented, and we got out and went walking down the road, and he first taken my hand, and then he put his arm around my waist, and we started walking down the road, and then he started telling me what a sweet little wife I would make him, and I was the sweetest thing in the world, and then we kept on walking until we got out of hearing or seeing distance of the car, and then he asked me if I did not want to sit down and rest awhile, and I told him that I wasn't tired, but that we could sit down awhile if he wanted to, and we sit down side the road, and then we started discussing the kind of furniture and the kind of house we wanted, and everything; and all the time he was loving me, and it led on up to this, and he asked me and I told him, 'No,' and told him to wait until after we were married, and he kept right on and right on, and, too, he said, if I would and if I got caught, we could go ahead and get married then instead of later when we had planned, and so I still didn't give in to him for that; and after a while he said, 'Well, if you will give in to me this time, I won't bother you any more,' and so finally, I did give in to him because I loved him and trusted him, and, too, I believed what he said. I had confidence in him, and so I got caught that night." She also testified: that the defendant, at the time of the alleged seduction and just prior thereto, had discussed with her the kind of furniture and the kind of house they (the prosecutrix and the defendant) wanted, and had told her that, if she became pregnant as a result of his sexual intercourse with her, they would get married then instead of later, as they had planned, and had promised her that, if she would yield to him that one time he would not bother her any more. It seems to us that, irrespective of whether this testimony constituted "other" artful and deceitful means, there is a strong probability that the jury so treated it. In either event, we think that the

judge in his instruction committed harmful error, as the defendant was not charged in the indictment "with other false and fraudulent means," but "with persuasion and promises of marriage." *Moore* v. *State,* 57 *Ga. App.* 287 (4) (195 S. E. 320) ; *Hill* v. *State,* 122 *Ga.* 166, 168 (50· S. E. 57) ; *McTyier* v. *State,* 91 *Ga.* 254 (18 S. E. 140).

The case of *Thomas* v. *State,* 146 *Ga.* 346 (91 S. E. 109), and other cases, including *Stoddard* v. *State,* 59 *Ga. App.* 347 (200 S. E. 816), holding to the same effect, which were cited and relied upon by the State, wherein it was held that, where the defendant was charged in the indictment with seduction by persuasion and promises of marriage only, it was not reversible error for the court, after charging the full definition of seduction, as given in the Code, to fail, to specifically retract or explain anything contained in the Code definition, the effect of the court's instructions, however, making it clear that the State relied for conviction upon proof of persuasions and promises of marriage only, are not applicable here, for in the instant case we do not think that the court made it clear, after charging the full Code definition, that the State relied for conviction upon proof of persuasion and promises of marriage only.

■ The rulings announced in headnotes 4, 5, and 6 do not require elaboration.

*Judgment reversed.* *Broyles, C. J., and Gardner, J., concur.*